Good morning. May it please the court. My name is Alan Gregory Wunderwheel, and I'm representing Deborah Kelly, the plaintiff and appellate in the case. And if I may reserve two or three minutes at the end for rebuttal. You know, I mentioned a few minutes ago that the weightings are not always accurate. The last three cases all could easily have been weighted for 10 minutes or so rather than 20. Just as the first case, which was weighted 10, probably should have been 20. So don't feel you have to use the full 20 minutes for this case. It's not none of these last three. It's that complicated a problem. OK, Your Honor. Perhaps then the court would give me some pointers along the way, because I'm looking. Just tell you a question that I have and get your feelings about it. The claim that went to the jury was the hostile work environment claim. Yes, Your Honor. That was the sole claim after everything else had been cut off. And one of your contentions, it's not your only contention, but one of your contentions is that you should have been allowed to go to the jury on the sex discrimination claim, correct? And the retaliation claim. Now, the sex discrimination got cut off in summary judgment. I understand. The retaliation was kind of cut in half and half cut off at summary judgment, half cut off at trial. Tell me, tell us what evidence was that could have been presented in to a jury under sex harassment or retaliation was not presented in the context of hostile work environment. Well, the essential part that was attempted to be presented in terms of the discrimination was the way that the males in the program were being treated around the cheating issue and that if that cheating issue had been had been investigated properly, the males could have been removed from the program. And that was not presented in hostile work to the jury on the hostile work environment claim? No, the judge ruled that all references to the cheating were inappropriate. But all of the business about the way in which she was spoken to, the photographs, the references, the sexual innuendos, did that come out in the hostile work environment claim? That came out, yes, Your Honor. And that was in front of the jury? Yes, it was, Your Honor. Now, she represented herself during all or at least part of the jury trial, right? The entire trial. And that was the point I wanted to address to the court as well. Before you do, let me ask you about another question related to what Judge Hopkins was asking you about. Whatever happened to the claim about the grading? As I understood the judge's ruling, he kept saying it's a very narrow ruling. He said she wasn't fired because she was she wasn't they didn't fail to promote her because she was a woman. They failed to promote her because she flunked the test. Now, then, he said, this is not a ruling on any of the things that relate to whether the test was fairly administered. I don't know whether she understood what the judge was doing. But what what he did do, it seemed to me, is to say all the issues are left open as to whether there was discrimination with respect to the grading of the test, the handling of the test, the timing of the test, anything relating to that is open. Now, that's not a hostile work environment claim. So the jury's answer doesn't help. Exactly. Exactly. It could be a retaliation claim. That's why we're so concerned that the retaliation was taken away as a matter of law. The judge is right that there's no you haven't made out of your client and didn't make out a retaliation claim. Then he would be right to make that ruling. But he could say that it's if this wasn't done in retaliation, this was just a policy that the company had against promoting women. That's not a retaliation claim. That would have been a discrimination claim. Discrimination claim. Yes. And what I'm trying to figure out from the way this case went along and maybe had this not been a pro per case, it might not have fallen out this way. It might have been clearer to the court, to the plaintiff and maybe even to the district judge if they'd been a lawyer. But it's sort of somewhere the sex discrimination claim was not precluded by anything that I could see. And I'm not quite sure where it was resolved during these. Well, it was resolved at the summary judgment stage. The first ruling. Pardon? Even the ruling that said that she was not promoted because. The ruling that said the discrimination claim will not be will not was dismissed. Where does it say that? That's in summary judgment. The partial summary judgment motion. That may be a different ruling than the one I read. I read the one that said we are ruling that she was not. The reason she was not promoted is not that she was a woman. Is that what you're talking about? Yes, Your Honor. But that is not a dismissal of the discrimination claim. That's just a ruling, as I understood it, because he said, I'm not saying that the test was fair. That's the confusion of the summary judgment motion. I mean, it seems to me that's the proper reading of it, that he left open the question of whether the reason that she flunked the test was that she was a woman. Well, my reading of the summary judgment motion is that he said the discrimination claim is off the table. You cannot you cannot go further with that. But you can have a sort of retaliation claim that that they in the I think it would be number five in my in my. What evidence did she have that showed that there was discrimination in giving the male person's advice on how to pass the test and all that? Did she testify to that? She didn't testify at all. No, Your Honor, she did not. What evidence do we have? What evidence did the district court have before it ruled on the motion for summary judgment? It had her declaration. Declaration. Her declaration for the summary judgment motion in which she made those. She did make those representations. Just a conclusionary declaration. Or did she have a statement that John Smith said that he was given this? Yes, Your Honor. It included the factual representations of the co-workers and other statements that were made. Was it declaration under oath? Yes, it was, Your Honor. Well, counsel, you know, I'm not sure you have the same understanding I have of the judge's order. The judge has said that summary judgment, the court cautions that it is not holding that no reasonable jury could find that the reason plaintiff failed a test was because of unlawful discrimination, including but not limited to hostile environment or discrimination in the grading of the tests or the conditions under which the tests were given. Its ruling is very narrow. The undisputed evidence shows that the defendant dismissed plaintiff from the learner program because she failed the exam. Now, that's all he said in this ruling. She was dismissed because she failed the exam. He then said whether she was discriminated against with respect to that exam is left open fully. Well, when they got to trial and in the preliminary before the trial, the judge said there's only two issues remaining, retaliation and sexual harassment. And he interpreted his own decision earlier. The paragraph that you have cited, Your Honor, is exactly the paragraph which I say causes the confusion because a few paragraphs further up, he says we are dismissing the claim on discrimination. But she didn't put any evidence on during the trial to show that male applicants got all this help or anything like that. She attempted to. Did she make a proffer on that? Pardon? Did she put a proffer on? Yes, she did. She did. She mentioned that she mentioned that there was testimony by the lady. Elizabeth Mello about how the other men were getting other tutoring.  But that the men were having an easier time in the class and that there was some appreciation that they were getting help in some kind of Steinway. Well, did that woman take the stand that she did? She put her testimony on. She testified. She did testify. Yes, Your Honor. About the grading. She testified not specifically about the grading, about how the class was being run and how it seemed, how it appeared that what it was designed, the class that she testified in in a general sense, that the way in which the class was conducted was to favor men and disfavor women. Yes, she did. But was that encompassed within the hostile environment claim? I'm sorry. Was it encompassed within the hostile environment claim when she said that in the class, the things that were done were hostile to women? I think the two overlap at that point. I think that's one thing that public courts have trouble with. Well, that went to the jury, the question of whether there was a hostile environment. And they said there wasn't. The thing that I'm trying to figure out. But the jury didn't have any instructions on how to tell the difference between hostile environment and discrimination. Well, it doesn't matter if what we're talking about is that the classroom atmosphere was such that it discouraged women and not men or encouraged men and was hostile to women. If the jury said no, there was no such environment, that would seem to take care of that aspect of the claim. What I am trying to find out, and I can't really, is what happened to the claims that the test was unfair. It was unfairly graded. Men were treated differently than women in the administration and the valuations of the test. I know that there is a that's not covered by a hostile environment claim that could be covered by a retaliation claim. If the reason for that was retaliation rather than just discrimination. So I can't find a anywhere. Anybody ruled on the discrimination claim. But Judge Siler has been asking, was there evidence produced to show that the tests were graded arbitrarily? Something about their administration showed discrimination. Yes, Your Honor. All right. And where what kind of evidence was introduced on that? Well, there was there was the evidence by several of the Pasco employees, Mr. Pat Martucci, Mr. Clark and Mr. Kilpatrick, about how the first test had not been timed. And yet the second test they came in first said it was going to be four hours. And then they said, no, we'll make it seven hours. OK, so there's a timing evidence. What else is there about the grading or somehow the test was made more difficult so that women would fail? Well, is there any evidence other than the timing? I understand the timing argument. The timing is the primary evidence. What was there evidence to show in the first exam that it took a whole lot longer than that to complete the exam? I wouldn't think the timing would be very relevant unless you could show that it was very constrained compared to the first test. Well, that seems like a long time to take a test. It does, Your Honor. And the first test, they were allowed 10 hours to take the test. The second time they were cut three hours off of that. She received she received a better score the second time. But you would think so. It's the same test, isn't it? Yes, it was, Your Honor. OK, so number one, not everybody took seven hours the first time. A lot of people completed it in four or five. That's correct. But she and this other fellow who flunked, I guess, were given 10. Yes. And then the next time they took the same test, they said, well, you've already taken this test once. But by this time, you know what the test is. You've done it once. The second time, seven hours seems reasonable. How does that show sex discrimination? Well, they did that to two people, a man and a woman, and they both flunked. Your Honor, it's our position that the fact that there was a man there is not per se determinative. It's not per se. Of the issue. It has to be the fact. Yes. And the the the position is that when she was taking the retest, that the shortening of the time was the essential retaliatory factor and that it was aimed at her. And the other fellow ended up having the same problem. All right. Well, you've saved the rest of the time for rebuttal. Well, I would just like to present the issue of her being a pro se litigant, that the defendants have said that she should not be treated any more favorably because she was a pro se litigant on several of the issues related to her not making objections at the time of trial or having made a single objection and not having made a continuing objection. And they cite the case of Jacobs and the filler. And that case was a case on summary judgment about notice. And the I think that case should be distinguished from to the specific circumstances of that case, because. Because the dissent in that case indicated that, you know. I think I wrote that. Yes, Your Honor, you did. OK. I think we're familiar with that. It was quite a while ago. So the point being that on some of these technical issues related to objections, I think the law does allow some consideration or solicitation as the as the language is for pro se litigant. Unfortunately, we don't follow dissents generally. But thank you. Wonderful. I think the other point being that those cases, that case seems to really put a lot of emphasis as if the pro se litigant has choice. And this case, she lost two sets of attorneys, the second being on the eve of trial. And there was testimony about her psychiatric problems related through the whole trial. And so I think it can be clearly said that she wasn't acting with full knowledge and understanding of the risks of being a pro se litigant. Thank you, counsel. Good morning, Your Honors. If it may please the Court, Alan Steyer on behalf of Appellee. A couple of points at the outset. Number one, with respect to counsel, he just misspoke. Ms. Kelly did not lose counsel on the eve of trial. The trial commenced in late June of 2001. Her second set of lawyers, the Court granted the motion to be relieved in February. In fact, in the pretrial mediation session, there was yet another set of lawyers, a Harvard-trained lawyer, highly experienced, who was representing her, but he didn't proceed. So I want to make that clear. That subject matter came up during the trial, didn't it? The lawyers that she had had? It did come up briefly. What was the relevance? The relevance was that the first witness in the case was a co-worker, Judge Breyer, who had bent over backwards and basically abrogated all the local rules because Ms. Kelly was improper. This particular witness had never been deposed, and we wanted to ascertain on cross-examination because of some of her statements if she had ever had contact with any of Ms. Kelly's lawyers, and she said she had. Plain and simple. The other point is that it came up in voir dire where Ms. Kelly injected the issue. When she voir dired the potential jury, she asked the whole of voir dire if anyone had a problem with her representing herself, and there was some questioning back and forth about that. In fact, one of the potential jurors stated that she would be sympathetic to Ms. Kelly because she was improper. So, in fact, Ms. Kelly had injected that into the trial. Now, you folks accepted that juror? Well, actually, I could tell you, Judge Hawkins, that I asked Judge Breyer to dismiss for cause the juror that said that she would be sympathetic, and he denied that challenge, and I was forced to use a peremptory challenge. But that's frankly, I think, a sideshow, and if I may, I think the pertinent question is what Judge Hawkins asked at the outsetet, and that is what evidence was Ms. Kelly precluded from presenting a trial that would have impacted any of these other issues? I guess it's really two categories. One is what was precluded, and second, what was offered. And is there a distinction, and does it make a difference? I don't think so. Well, as follows. Nothing was precluded. Nothing whatsoever. So she was free to put on any evidence concerning the grading? She called 16 witnesses. She cross-examined Mr. Clark, who was the person who graded all the exams. He testified. She cross-examined Mr. Kilpatrick, the human resources manager at the company, who made the decision to have the review. Let me ask you a question. Hold on. A question. Yes. Did you say nothing was precluded by the order of summary judgment? The summary judgment order. Is that your answer, that it didn't preclude the introduction of any evidence? That would be my interpretation of your order. Have you ever heard of any other summary judgment order that didn't affect the introduction of any evidence in a case? Let me respond to that, if I may, Your Honor. Number one, as you pointed out, Judge Breyer expressly stated at page two of his ruling on the discrimination claim. She had three claims. Is this answering the question of whether you are aware of any other case in which there was a summary judgment order that did not affect in any way the introduction of any evidence? Yes. Well, let me answer it abstractly. If a court granted it. Just tell me whether you're aware of it. Not off the top of my head. Any other part of your body? Well, perhaps my right foot. So you're not aware of any case. Don't you think it's rather unusual to give summary judgment on something that has no effect on the trial? And the answer is no. If the summary judgment is granted on a legal issue, then that may not preclude any of the factual evidence. And that's, in fact, what I think Judge Breyer took pains to articulate in the summary judgment order. Bear in mind, Ms. Kelly had three claims. Discrimination. She's saying the triggering event in this case is I was dismissed from this learner program because I'm a female. Yes. Judge Breyer correctly ruled, based on the evidence before him at the time when she was represented by counsel, that there's no genuine triable issue of fact about that because a male was dismissed simultaneously. Why were both of these people dismissed? Nothing whatsoever to do with gender. They failed the exam twice. Well, it's not that simple because he said it didn't preclude the question of whether the reason they failed the exam, or she failed the exam, was discrimination. Not discrimination, but retaliation as to the condition. How about the word unlawful discrimination? Yes. The Court of Cautions is not holding that no reasonable jury could find the reason plaintiff failed the test was because of unlawful discrimination. Including. But not limited to hostile environment and or discrimination in the grading of the test. Precisely. And the issue that they raise on appeal is that somehow the way the test was administered. But you're moving on from the question of what this order does. You say it just said that she was not. It was not because she was a woman. It said, yes, she wasn't fired because or not promoted. She was promoted because she didn't pass the test. But it may be that the test discriminated against her because she's a woman. Not because she's a woman, but because of the manner in which the tests were given. Which may have constituted unlawful discrimination. Yes. And if I could respond. The point being, nothing precluded Ms. Kelly at the time of trial from putting on any evidence whatsoever regarding the circumstances in which the tests were given. She had a full opportunity to do that. And the people who administered the test, she's either subpoenaed them to trial or we voluntarily brought them in. They were subject to cross-examination. Did any of these witnesses say that the men were given some coaching there while they took the exam or whatever she was alleged? That's the whole point, Your Honor. They weren't. And I think the proof is in the pudding here. After a two-week jury trial, 16 witnesses, expert witnesses on both sides, a jury of eight men and women, predominantly female, I might add, went back and in an hour and 45 minutes returned a defense verdict. Were they given a question? Was the reason that their test was graded as it was unlawful discrimination on account of sex? And the answer is no. We proposed jury instructions. Ms. Kelly did not, even though she had the opportunity. She had the opportunity to object to our jury questions. Okay. But the answer is the jury was never given the opportunity to answer the question of whether there was unlawful sex discrimination in the administration of the test. Let me rephrase it differently, if I may. In the course of the trial, at the conclusion of evidence, we brought a Rule 50 motion. And we asked Judge Breyer to take the case away from the jury. Judge Breyer denied the motion to the extent that he allowed the hostile work environment claim to go to the jury. As to the retaliation, basically there were two issues. Did the company retaliate against Ms. Kelly by having a seven-hour time limit on the second exam? He found that there was simply no way a reasonable jury could infer retaliation for the same reason, Judge Reinhart, you articulated to appellants' counsel. It was the same exact test. Eighty-nine questions. It's in the record. The company didn't change the order of the questions. They didn't change anything except in two questions the numbers changed. Further, and it's undisputed in the record, under the Memorandum of Understanding between Ms. Kelly's union and the company, it says if a student fails the first phase exam, they must be given the opportunity to retest. Not only was she and the male student given the opportunity to retest, but they got more tutoring than was required. Further, to show the lack of retaliatory intent on behalf of the company, instead of giving them a test. You're really answering a question I didn't ask, although it may be wrong with your answers. I'm just trying to find out where, if ever, anybody was asked to decide or decided the question of whether whatever happened was a result of unlawful sex discrimination. You answered yes, Judge Breyer ruled it wasn't because of retaliation. It's not the same question that I asked. But it is, and if I may explain why, Your Honor. The evidence, as Judge Hawkins asked at the outset, the summary judgment ruling, as Judge Breyer pointed out, did not preclude Ms. Kelly from bringing in any particular witness whatsoever. She had full reign. The teachers were brought in and subject to cross-examination. Her fellow students were subject to cross-examination. And the point is, we've got to be careful with the word discrimination versus retaliation. Yeah, they are two different words, I think. They are, and they're different in the statute. The point is, if Ms. Kelly chose not to ask for some jury instruction about discrimination. Okay, we're back to that issue originally. And that's been waived. So you're agreeing that nobody ever decided the question of unlawful discrimination, and you're saying the reason is because she didn't ask for a jury instruction and therefore waived that issue. Well, not only did she waive it if it existed, but the issue as to the reason why she was expelled from the program, that narrow question was determined at the summary judgment stage. All right, let's go back to that. He said, it's not because she's a woman, it's because she failed a test which may have discriminated against women. Now, if you have a black defendant, and he's given an entirely different test from everybody else, and it says, have you memorized the United States Constitution? We used to do this in the South. So they gave the black defendant that kind of a test. And the white defendants are asked, can you count from 1 to 10? And the judge says, he wasn't fired because he was black. He was fired because he failed a test. Now, the test may have been discriminatory. Isn't that exactly what the judge said here? Yes and no. So the question is, was the test discriminatory? And the response to that is absolutely not. You said nobody ever answered that question. But it's so clear, if I may please. In your hypothetical, the person of color was discriminated against because they had a different test. I know the difference. She was given the same test. Same exact test. I understand that. You know, that's not what I'm asking you about. I'm giving you the question of what significance it is that you're not fired because it's a woman. You're fired because you failed a test, which may be discriminatory, he said. Not the test itself was discriminatory. Either the administration, the composition, the grading, whatever it is. Not the composition. What she challenges is on the retest, the administration. Her whole pitch, among other things, is, hey, on the first go-around, I had 10 hours. You know, on the second go-around. You're talking about the merits. I understand your argument that on the evidence, you're entitled to win. That's not what we're talking about. Okay. That's a different issue. The issue is, as I understand your argument, that, A, she has no case. It's no good on the merits. Okay. Put that aside. B, the question is, was the issue decided by anyone? And your answer is, nobody ever decided the question of whether the test was, however it was, the length of time, the grade, whatever. Nobody ever decided, rendered a verdict or a judgment as to whether that was a discriminatory test. But she waived that issue by not asking that it be presented to the jury in the jury instructions. And she waived that issue to the extent that she chose not to put on evidence that perhaps in theory she could have put on. But what I am trying to articulate to the panel is that this is really an academic discussion we're having, because to get back to Judge Hawkins' question, in terms of the practical implications, nothing happened at the trial from an evidentiary standpoint that would have impacted her ability to prove any claim that she had. Her counsel suggested she was precluded from putting on some sort of evidence. Was she precluded from doing that? With all respect to counsel, he was not at the trial. He came in on appeal. I tried the case. I was there. And there's nothing that she was precluded from putting on, other than the motions in Limine, which were granted, which they've raised on an abuse of discretion standard. This is not raised in their issue. It wasn't like she said, I want to put on this, and the judge said, you can't do that. In fact, in the ultimate question that you may, as you're pondering this, bear in mind, she chose not to testify. Now, I believe she chose not to testify because having been through deposition, she knew what would come out on cross-examination about her own conduct in terms of the type of language she would use, including racial epithets. And I think she was fearful of having that heard by the jury, particularly because there were minority people in the program, who, by the way, came and testified. And I think that was a sensitive issue for her. But she made a very conscious decision not to testify, even though Judge Breyer had said, are you planning to testify, because, as you know, an issue came up about a proffer about that. And she said, no, I don't think I'm planning to testify. I'll put on my case through other witnesses. So you can't come now to the court of appeal after making that type of a decision in this type of case and say I was precluded from putting on evidence. And I might also add that this whole issue about cheating is a sideshow. If you look at her deposition testimony, which is part of the record, she admits that the students were ten feet apart in the classroom and that the test was proctored, plain and simple. And the bottom line, to come back to Judge Reinhart's question, is that this is a case of a person who unfortunately, just like this male colleague, just didn't have the requisite skills to pass this class, which was very technical in nature. She's someone who had been out of school for many, many years. There was a lot of, you know, math and things of that nature, and just couldn't accept the fact that she didn't pass, just like the male student didn't pass, and could have gone back and worked at the company, but instead chose to take on the company for years of litigation trying to say that this happened and that happened. I think when it's all said and done, you look at the jury's verdict on the lack of a hostile work environment claim, and it really subsumes just about everything else here, because the retaliation claim, which was taken away, in essence, she's arguing, the company retaliated against me because they made me take the same test ten days later in seven hours. And I think Judge Reinhart had raised the point before, of the ten students in the class, seven of them on the first exam finished within six hours. And then the person who made the decision to have a seven-hour limit, Mr. Kilpatrick, testified at trial subject to cross-examination. It's in the record before you. And he said, I felt it was reasonable to have a time limit because it was the same exact test. One must think to themselves, if the company had bad animus, why wouldn't we then give a new test and make it more difficult if someone was, quote, out to get her? As Judge Breyer pointed out, all the evidence in the record is to the contrary. Here's a situation where the woman comes forward, says, I need help, can I get tutoring, and it's undisputed the teachers are giving her hours upon hours of private tutoring sessions. If anything, the record shows that the company bent over backwards to assist her. Unfortunately, she, just like this male student, just weren't cut out for this particular line of work. It doesn't make her a bad person, but conversely, it doesn't mean that the company acted inappropriately. Thank you, counsel. Thank you, Your Honor. Thank you, Your Honor. Quickly. On the page 131 of the excerpts of record that we supplied is the interchange on page 80 of the transcript where Mr. Steyer says, OK, one last thing. And this is something I'll ask all of you. Obviously, you can see that Miss Kelly is representing herself. There was a time when she was represented by counsel. They're no longer involved. Miss Kelly, with her wits about her at this time, says, objection, Your Honor. The court, well, I think I'll sustain the objection. Later, not only is Miss Brown, the first witness, pummeled with the former attorney's questioning, Miss Mellow is pummeled on page 575 of volume four of the reporter's transcript. And that someone was her former lawyers, yeah. And did you speak with her former lawyers over the past couple of years? Yeah, I've spoken with a couple of them. And could you tell the jury on how many occasions you've spoken with Miss Kelly's former lawyers, please? Basically, probably just that one time for, I don't know, maybe a half hour or something. And was that Miss Dixon's firm? Was it her next set of lawyers, Mr. Katosky? And then it goes on to the next page. And at that point, Miss Kelly objects, and the court overrules her objection. So this is one of those instances where the horse is out of the barn, and that was allowed to happen. On the question of her not testifying, we did put that issue before the court. We won't belabor the point. But we think that it was very significant that the court required that she was going to have to write out her testimony ahead of time, which was not the procedure used on the opening statement. When Mr. Steyer presented on the opening statement that she write it out ahead of time, the court said, no, we can just give her the directions, and if she goes off to left field, you, Mr. Steyer, can raise an objection. That did not happen when it came time to her to testify. Instead of the court helping her get to the merits of the case, maybe proposing that you can write out your questions for the court, the court told her that she could not testify unless she wrote out her whole testimony. We think that was, for a person in this situation, an insurmountable burden to her testimony. Thank you, counsel. Okay. The case has been argued and will be submitted.
judges: Reinhardt, Siler, Hawkins